

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>White Apple iPhone 13<br>Seized as FP&F No. 2022565400013701 Item 0002<br>("Target Device 1") | Case No.   22mj3085 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
          telephone          *(specify reliable electronic means)*.

Date:   08/24/2022

*Judge's signature*

City and state: San Diego, California     HON. Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

>White Apple iPhone 13
>Seized as FP&F No. 2022565400013701 Item 0002
>**("Target Device 1")**
>
>Blue Motorola Smartphone
>Seized as FP&F No. 2022565400013702 Item 0002
>**("Target Device 2")**

**("Target Devices")**, as further described in Attachments A-1, A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Jesus VILLELA-Beltran and Ron Richard GONZALEZ for transporting and moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On August 23, 2022, Border Patrol Agents A. Gaspar, A. Gumbs, F. Hurtado, and J. Rodriguez were performing assigned duties in the Chula Vista Border Patrol Station's area of responsibility. At approximately 8:10 AM, Agent Gaspar observed a red Chevrolet Camaro traveling east on Otay Mesa Road in tandem with a black Nissan Altima. Agent Hurtado was parked at the intersection of Otay Mesa Road and Paseo De La Fuente and observed the same two vehicles approaching the intersection. Agent Hurtado observed the Camaro slowly travel through the intersection while the Altima stopped and remained idle at the intersection of Otay Mesa Road and Paseo de la Fuente. Agent Hurtado then observed two individuals run out from a ditch and enter the rear passenger seats of the Altima. The Camaro was monitored by Agent Rodriguez and was seen traveling north on Alta Road and entered a recycling center where the driver performed a three-point turn and then traveled south on Alta Road. At no point did the driver exit the vehicle or talk to anyone.

12. After the individuals entered the Altima, the vehicle traveled south on Paseo De La Fuente, which leads to a dead end. Agent Hurtado waited for the Altima at the intersection of Paseo De La Fuente and Otay Mesa Road. The Altima then traveled north on Paseo De La Fuente and turned left on Otay Mesa Road. Agent Hurtado continued to follow the Altima while Agent Gumbs waited in his marked Border Patrol vehicle at the intersection of Otay Mesa Road and Travel Plaza Road. As the Altima passed his position, Agent Gumbs proceeded to follow the Altima south on Enrico Fermi Drive. Agent Hurtado observed the Camaro directly behind Agent Gumbs' vehicle as they traveled south on Enrico Fermi Drive. Agent Gumbs attempted a vehicle stop, but the Altima failed to yield and continued south on Enrico Fermi Drive running two red traffic lights. At this moment

5

the Camaro was observed slowing down and distancing himself. Agent Gumbs performed a Precision Immobilization Technique and was able to spin the Altima 180 degrees. The driver of the Altima later identified as defendant Jesus VILLELA-Beltran, put the Altima in reverse, turned around and attempted to drive off. Agent Gumbs positioned his vehicle in front of the driver's side and was able to disable the Altima. Agent Gumbs got out of his vehicle and instructed VILLELA to turn off the engine and remove the keys.

13. Agent Gaspar arrived on scene and approached the vehicle and observed VILLELA, and two passengers, who were later identified as the material witnesses Mario ECHEVESTE-Lopez and Edgar Jair PADRON-Medellin. Agent Gaspar conducted an immigration inspection on ECHEVESTE and PADRON. ECHEVESTE and PADRON stated they are citizens of Mexico without immigration documents to be or remain in the United States legally. At approximately 8:22 AM, Agent Gaspar placed ECHEVESTE and PADRON under arrest. At approximately 8:23 AM Agent Gaspar placed VILLELA under arrest.

14. All local commuting traffic observed the law enforcement activity and yielded to the shoulder, however the Camaro attempted to go around all the commuting traffic and the traffic stop. Agent Hurtado went behind the Camaro and activated his emergency lights and sirens. The Camaro slowly continued to drive south on Enrico Fermi Drive. Hurtado immediately pulled in front of the Camaro and had him stop. The driver of the Camaro was later identified as defendant Ron Richard GONZALEZ. GONZALEZ began arguing with Agent Hurtado for the meaning of the stop. Agent Hurtado attempted to calm GONZALEZ down to better communicate. Agent Hurtado explained to GONZALEZ that his vehicle matched a description of a vehicle used in a prior suspected human smuggling event in the same area. GONZALEZ was wearing a FedEx employee uniform and stated he was just driving to work at the nearby FedEx facility. GONZALEZ presented Agent Hurtado with photo identification.

15. Upon examination, Agent Hurtado immediately recognized GONZALEZ from a separate event earlier this year on February 15, 2022 that did not involve GONZALEZ' Camaro. Agent Hurtado uttered to GONZALEZ, "It's you!" GONZALEZ chuckled and responded, "You guys didn't arrest me last time and I'm always here in the area." At approximately 8:23 AM Agent Hurtado placed GONZALEZ under arrest.

16. At the time of arrest, a white Apple iPhone **(Target Device 1)**, was found in VILLELA's front right pocket of his jeans. Also, a blue Motorola Smartphone **(Target Device 2)** was found in GONZALEZ' hand. VILLELA claimed ownership of the white Apple iPhone **(Target Device 1)**. GONZALEZ claimed ownership of the blue Motorola Smartphone **(Target Device 2)**.

17. Defendant Jesus VILLELA-Beltran was advised of his Miranda rights. VILLELA stated that he understood his rights and was willing to answer questions without an attorney present. VILLELA stated that he lives in Tijuana and was given instructions on where to pick up two illegal aliens from his "Tio," and he was being paid $600.00 USD per individual. VILLELA stated that he was told to park at a local fast food establishment in Otay Mesa, California, and wait for a red Camaro that would honk its horn, signaling VILLELA to follow the Camaro to the pick-up location. VILLELA stated that he was to transport the individuals back to the fast food establishment, park the vehicle and walk away. VILLELA stated that one of the rear passengers was on the cell phone and was instructing VILLELA to keep driving during the pursuit. After the recorded sworn statement VILLELA stated that he had a phone conversation with GONZALEZ to organize their plans.

18. Defendant Ron Richard GONZALEZ was read his Miranda rights. GONZALEZ stated that he understood his rights and was willing to answer questions without an attorney present. GONZALEZ stated that he lives in Tijuana and works as a contractor for FedEx and sells car parts. GONZALEZ stated he was not involved in today's

smuggling event but had previously picked up illegal aliens for profit approximately 2-3 months ago. GONZALEZ stated he was in the area dropping off car parts.

19. Material witnesses, Mario ECHEVESTE-Lopez and Edgar Jair PADRON-Medellin stated that smuggling arrangements were made, and they had agreed to pay between $9,000 and $10,000 USD to be smuggled into the United States. ECHEVESTE and PADRON were instructed to run north towards the city limits and wait for further instructions. After arriving to the pick-up location, ECHEVESTE stated he received a phone call from the smuggler and was told the pick-up vehicle was a black Nissan Altima. When the Altima arrived, ECHEVESTE was told by the smuggler over the phone to get into the vehicle. PADRON stated that the driver told them to "get in" in the Spanish language. ECHEVESTE stated he was scared they were going to get in an accident while the driver was trying to get away. PADRON stated he was also scared and was hoping the driver would stop. When shown a photographic lineup, PADRON was able identify VILLELA as the driver of the black vehicle in this event.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that defendants Jesus VILLELA-Beltran and Ron Richard GONZALEZ were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the defendants, VILLELA, and GONZALEZ, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **July 23, 2022, through August 23, 2022.**

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

9

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date this warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

### CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

26. Because the **Target Devices** were seized at the time of VILLELA and GONZALEZ' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **July 23, 2022, through August 23, 2022.**

//
//
//
//
//
//
//
//
//

27. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1, A-2 and seized the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __24th__ day of August, 2022.

_____
Hon. Michael S. Berg
United States Magistrate Judge

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

White Apple iPhone 13
Seized as FP&F No. 2022565400013701 Item 0002
(**"Target Device 1"**)

**Target Device 1** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

## ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **July 23, 2022, through August 23, 2022**:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.